Thank you, Your Honor. May it please the Court, Jonathan Franklin, for the appellant, Starr Chrysler, Chief. In Section 747, Congress gave the opportunity to both terminated Chrysler dealers and terminated GM dealers to seek reinstatement of their prior franchise agreements through binding arbitration. Starr exercised that right and prevailed before the arbitrator in every respect. Chrysler then, however, did everything that it could try to do to thwart both the arbitrator's ruling and Congress' remedial scheme. First, on the very day that Section 747 was enacted, Chrysler gave Starr's franchise away to another competing dealer down the block without waiting for the outcome of the arbitration process and without enforcing its facility requirements on that dealer. Then, after it lost on every issue before the arbitrator, Chrysler refused to implement the arbitrator's binding determination that Starr was to be given back the franchise that it was previously— Well, what exactly did the arbitrator order? Reinstatement or that it be added to the dealer network? Both. Was that the latter? Both, Your Honor. And what the arbitrator is tasked to do is to order in all cases, regardless of what was being sought, the arbitrator is to determine whether it's added to the network. But what this arbitrator did is say added to the network with respect to the franchise that it was operating. And there was no dispute below that the arbitrator intended to award reinstatement, which is what Starr had sought. Chrysler argued, and the district court found, that that remedy was simply unavailable to Starr. Well, I would have to point to the arbitration award on page 6. It says, claimant shall be added to new Chrysler's dealer network with respect to the Chrysler Jeep dealership it was operating in Glendale, California at the time of rejection. What is your response? With respect—the language when he said with respect to that dealership it was operating at the time of rejection, that meant its prior dealership, not some new dealership that then Chrysler would be giving it. And the district court said that even though the statute says that any covered dealership, and that includes Starr, undisputedly, is entitled to seek reinstatement of its franchise agreement, that remedy, according to the district court, was unavailable. And with respect, we think the district court erred in both of its rationales on that ground. First, it said that only GM dealers, not Chrysler dealers, could have their franchise agreements reinstated. The statute draws no distinction between the two companies, and Congress drew no distinction between the two companies. In either case, the dealer is in the same position, whether it's a GM dealer that's been terminated after a wind-down period, or it's the Chrysler dealership. They're in the same position. They are out of luck. They don't have a franchise. I thought they were treated somewhat differently in the bankruptcy proceedings. Yes, they were. In the bankruptcy proceedings, there was a technical difference in that. Well, it's significant, isn't it? I mean, you know, they were – I thought Chrysler was allowed to basically repudiate these – a certain number of dealerships. And GM repudiated them all. But didn't – I thought the difference was that GM got to – they sort of – they were subject to reapproval or something. I'm sorry, Your Honor. They had a wind-down period. So what GM did is say, we're going to change your agreements and put in a standard 17-month wind-down period, but after that, you're done. And the difference was that new GM, the new GM company, assumed those agreements subject to the wind-down period. But after the wind-down, they're out, and they're in the same position that Chrysler was in. And what we said with reference to the labor cases is that they're very instructive in that what the Supreme Court held in the Golden State case is that with regard to an employee, an employee can be reinstated by a company that purchases assets in bankruptcy. A remedy of reinstatement is simply not categorically unavailable just because a company had no previous relationship and purchased assets in bankruptcy. Even if you're assuming that they're entitled to reinstatement, why would it be a reinstatement on all the terms and conditions that existed before the bankruptcy? That doesn't make any sense. I think it does make sense. Because they started – Chrysler was starting all over again after the bankruptcy. It was new Chrysler. Chrysler was starting all over, but Congress said, hey, wait a second. These dealers, they're entitled to seek reinstatement. The definition of reinstatement under the law is restoration of the status quo. And that would be – Well, they can come back in as a dealer, but it doesn't necessarily have to come back in on the exact same terms that existed before the bankruptcy proceeding. Well, we understand that to be – And Congress gives them – and Congress provides – they say a letter – if you prevail in the arbitration proceeding, you get a letter of intent with customary and – what was – usual and – Customary and usual. Customary and usual terms. I mean, so clearly Congress was thinking about the difference between pre-bankruptcy and post-bankruptcy. It was also thinking about reinstatement and the fact that these dealers, in Congress' views, shouldn't have been terminated in the first place. And therefore, when – I mean, we're just using the legal definition that applies, for example, in the employment context, and that's restoration of the status quo. Well, Congress was thinking of reinstatement. They certainly didn't make that clear in the statute because I'm looking at subsection D, the section that talks about the covered dealership's right to elect arbitration. And it says that after considering the various factors that the arbitrator required to balance, the arbitrator shall decide, based on the balancing, whether or not the covered dealership should be added to the dealer network of the covered manufacturer. So that's subsection D. And then when you move to subsection E, where it talks about if the – if STAR prevails in arbitration, what they get then is a letter of intent on customary and usual terms. So it seems like the statute really contemplates addition to the network and then the issuance of a letter of intent by New Chrysler. Where am I wrong in misreading these provisions? Well, Your Honor, with respect, I think three points, Your Honor. First, in subsection B, it says you can seek reinstatement. But I also want to point to language in subsection D that Your Honor didn't mention but is important. It also mentions in subsection D Congress directs the arbitrator to provide a statement indicating, quote, whether the franchise agreement at issue is to be renewed, continued, assigned, or assumed. What that is saying is we're talking about the franchise agreement. And this goes to Judge Piazza's question about the terms and conditions. The franchise agreement at issue is the previous franchise agreement. The arbitrator is directed by Congress to decide whether that agreement is to be renewed. That means reinstatement of that agreement. And with respect to the added to the dealer network, yes, we were entitled to be added to the dealer network, but on the terms that we had before. Now, if time permits, I'd like to move to the second argument that we have. And this argument pertains regardless of how the Court resolves the first issue that we've just been discussing. And that is that the district court erroneously granted summary judgment to Chrysler, where Chrysler, as the summary judgment moving, presented no evidence, no evidence at all, that the final letter of intent to which it sought to bind Star was customary and usual as compared to other final letters of intent to which other dealers were bound. And I struggle to understand that argument because the district court's analysis was to compare the letters of intent issued by New Chrysler to everybody. So why isn't that the right comparator? Because those weren't the finals. Those weren't the finals. Those were just the first initial offering that it made to those dealers. It was not the final sign letters of intent. And where is the support for the argument that when you look at what's usual and customary, customary and usual, that you have to look at what's accepted by the various dealers rather than what was sent out? The reason, Your Honor, is that under Chrysler's interpretation of the statute, the only protection that a dealer that wins an arbitration gets, because there's no arms-length negotiation with them, the Chrysler doesn't want them and they're forced by the arbitrator to take them back, the only protection they get is to get the same deal that other people got, not whatever was issued to them as an initial negotiating gambit, whereas everyone knows that somebody who's going to negotiate sends out a lot of terms that they know the other side's not going to take. If we're going to get the protection of the statute of customary and usual, it has to be the same kind of agreement. And we know it's not because a STARS agreement, the one that they're seeking to bind us to, was not the original one that was sent out. They changed it. They changed it a few days before we filed suit. They deleted a term. Well, everybody's differently situated, right? So what is wrong with sending out a similar letter to all of the dealerships that are covered or added to the network and then depending on their individual circumstances begin the negotiation from there? Isn't that how it generally works in the business world? It does, but there's no negotiation with a dealer that's been ordered, reinstated by the arbitrator. No negotiation. The only protection we get is... Well, assuming that that reinstatement was not ordered, assuming that the arbitrator only orders that STAR be added to the dealer network, then New Chrysler sends out the same letter of intent to everybody, and then depending on their individual circumstances, the final agreement may be modified. Why is it that the initial letter sent out to everybody, not the usual and customary letter? Because what they're trying to do is bind us. They want to bind us, and the protection the statute gives us under Chrysler's interpretation is we get the same deal that somebody else. That's how it works. The protection is that they're not negotiating with us, so we get the benefit of the other people's negotiations. Whatever the two sides agree on is customary and usual. That's the letter of intent because they're trying to bind us. It's not just simply something that they're sending out. They are trying under the statute to say this is all you get. You get the same deal that everyone else gets, and all we're saying is as the movement on summary judgment, they had to compare apples to apples, not apples to oranges. So let me play out your argument for a moment. Let's say that you prevail and summary judgment is reversed on your theory that the expert declaration indicates that these terms are so onerous that nobody would ever accept them. They're not fair and reasonable terms, essentially. You're kind of reading that into the letter of intent in the sense that we got these letters of intent. The terms are so onerous that nobody would accept them. So play it out to the trial. Your theory then is that New Chrysler would then have to present evidence at trial or somebody would have to present evidence to the jury of the various letters of intent that got sent out and then compare it to what people, what the cover dealers accepted. Well, it was actually negotiated and accepted. But, Your Honor, I think misstated our position. Our position is not simply that it's a reasonableness requirement. We're accepting on this argument Chrysler's understanding that customary and usual means a comparison to what other people got. We're saying something quite narrower, and that is, customary and usual in this context has got to mean what they got, not some initial negotiating gambit, what the deal was, because that's the protection we get. And at trial, Chrysler would then do what it didn't do on summary judgment. It can present the evidence of the actual deal, and we could say, well, that's not customary and usual because nobody else got the same deal that you're trying to foist on us. So that's how we think the trial would go. And we also think the state law claims should be reinstated under the unfair competition law, both because it was unlawful and because it was unfair. And the district court only addressed the issue on Section 747. But we do think that the conduct, particularly in installing the other dealer, Jack Ellis, in with no justification as to why they waited six months to do that. They waited six months after the bankruptcy. Then on the very day the statute was enacted, they put the other dealer in front of us, and they waived the facility requirements as to that dealer. They had no explanation as to why they waited six months to do that and why they did it on that same day. The only explanation is that they were trying to thwart our ability to regain our franchise, and we think that California's unfair competition law does address that situation. So both with respect to the Section 747 claim, the summary judgment issue, which I think is a rather clear cut, and the state law claims, we think that summary judgment should be reversed, and I would reserve the rest of my time for rebuttal. Okay. I believe New Chrysler is going to share time with the government? I believe the order was the United States gets five extra minutes, and we've agreed among counsel that the United States will follow my argument. All right. May it please the Court, my name is Hugh Gottschalk. I represent the appellant Chrysler Group in this appeal. Section 747 clearly and unequivocally provides the remedy that is available to a dealer who prevails in the Section 747 arbitration. As the Court has already described in its question, it is a customary and usual letter of intent. And the words customary and usual by their plain terms mean similar to other letters of intent that Chrysler Group has issued. Well, let me just ask in response to opposing counsel's argument, why wasn't it your burden to produce the final letters as opposed to the general letters, these are all the terms and conditions, and then assuming nobody negotiates that, why wasn't it your burden to produce those final letters? There are several answers, Judge Nelson. First, the statute says provide the customary and usual letters of intent. So we took the position in our argument before the district court that the letters we provided to Starr must be customary and usual in comparison to letters of intent provided to other dealers. And that was essentially our presentation of proof in the summary judgment motion. I mean, you're really shortchanging though. I mean, go ahead. I'm sorry. No, but then the second answer is the word in your question was produced. We did produce those. Those executed letters of intent, the final letters of intent, were produced in the litigation, in the district court litigation. They were in the possession of the plaintiffs. We concluded that, for the reason I just said, that as provided is what the statute says, we made the argument to Judge Fies that when you compare what we provided to Starr to what we provided to other dealers, they were customary and usual. Judge Fies agreed that all the provisions were found in the vast majority. The plaintiff did not come forward and say, but wait, we should look at the executed letters, which they had from discovery. They did not say your calculation was wrong. They didn't challenge any of the evidence we presented to the district court under Rule 56, and therefore what Judge Fies basically said. Well, they did. They brought in, they had an affidavit from an expert. They did. And you submitted a declaration from Mr. Tengelman? Tengelman? Tangeman. Tangeman. And his, it's very short and it's very conclusory. It is. And it's clearly about the initial letters of intent. Yes, it is. It's about the letters of intent that were provided. I don't see how you can stand up there and argue that using the term provided, I mean, I know lawyers do this all the time, but that has to really mean the final terms and conditions on which the letters of intent were signed off on by the parties. It can't possibly mean, as Judge Wynn was mentioning, it can't possibly mean the initial burst of letters that, because then what you're saying is that there's no negotiation whatsoever. You get this letter, you sign it, done deal. And that's clearly not what Congress intended, because Congress didn't intend for you to go through the back door to prevent these guys from getting their dealership back. Congress clearly intended there would be some, you know, respecting New Chrysler, what New Chrysler had been through and what it had to go through and where it was going, but also respecting what the dealers went through. And they were trying to come out to a medium ground and to suggest that New Chrysler could just offer a set of LOI and say, take it or leave it, buddy, you're out of here. We're done. That's not correct. I don't buy that argument. So a couple things. One, the assumption in that question, Judge Paez, is that the executed database of LOIs is different. A premise of your question is, with all the other dealers, and Mr. Franklin suggested it, that we issue a letter of intent, there's lots of negotiations, and then if you look at that database of as-executed letters, they would be different. That's clearly a premise of your question, that because these post-arbitration dealers wouldn't get the benefit of the negotiations, the letters issued was different than the executed letters of other ordinary course dealers. There's no evidence to support that conclusion. That is exactly my response to Judge Nelson's questions. We provided those executed letters of intent. I think then it goes down to the question of whose burden it is on summary judgment, because you started and rested with the definition of usual and customary as the provision stage. All of these letters look similar. They look the same. We've sustained our burden of demonstrating that the LOIs are usual and customary. Now they're coming back and saying, well, the definition is really what the dealers eventually accepted. So use that universe as a comparator rather than the initial stages. Well, now the problem is, at summary judgment, if we accept that argument, I'm not saying we will, but if we accept that that's the right comparator, whose burden was it to come up with the evidence showing what was eventually accepted? I think that is exactly the question, Judge Nguyen. It is our burden in the first instance to put in competent, admissible evidence that the letter given to Starr was customary and usual. Rule 56C makes very clear it is fundamentally our burden at the outset. Rule 56C and the Matsushita line of Supreme Court cases also make clear that once the defendant does that, the nonmoving party has the burden of putting in other evidence. And that's exactly what Judge Fease, a very experienced judge, pointed out, that their declaration, while it has a lot of generalities about what would be acceptable, never controverted the evidence that your side produced in terms of what is usual and customary. And so now you're saying they had all that through the production of discovery, but never presented it in opposition to your motion for summary judgment. Is that your position? That is exactly right. And let me give another example. I could envision an argument the plaintiff might make in the district court, or could have made, was that customary and usual really means only California dealers. Really, let's not look at customary and usual for all dealers. Let's look at it for California dealers because there are special issues in California. That could be an argument they might make. I don't think it would be a winning argument. But again, it falls into the question that you just asked, Judge Nguyen. It is their burden with all the data after we come forward with competent, admissible evidence to show that the letters are customary and usual as to what we have provided to prior dealers, that no, that's not right. You've just provided letters. The executed letters are different. No, California letters would be different. Look, let me ask you this. Why wouldn't you want to demonstrate to the district court with the final letters of intent that were signed off by dealers who were terminated in the bankruptcy proceeding and won at their arbitration proceedings? Why wouldn't you want to show the district court the final letters of intent? Here's what we did with these other dealers that got back in. Here's what we offered to Starr. Look, basically it's all the same. Why wouldn't you do that? The short answer is we went through that process and partly because of what the statute said and partly because the difference between provided and executed tends to be site-specific issues. So, for example, if an arch is required at a dealership and the city of Santa Monica has a municipal ordinance against arches, then we will obviously take that out. Again, the premise that we largely change these two I don't think is either accurate or supported by the record.  I believe that executed LOIs are fundamentally the same, that the statistics would not be different. The premise of Mr. Franklin's argument, and I think your questions is, that they really are different and that our proof fails because they are so different. And I certainly don't think there's anything in the record to support that. And I go back to Judge Nelson's original question. One of the things their expert alluded to in his declaration was that oftentimes when there's these conditions about you have to build, you know, you have to construct or you have to obtain a new building and significant modifications and whatnot, is that there are sweeteners and other things that are added in to make it a success. Now, do we know if in any of these other executed letters of intent that there were such items? I am certain that there were some somewhere in the four years. I do not believe that it is in any way statistically significant, but I'll quickly respond that I don't have evidence in the record of that. There is no evidence in the record as to how executed LOIs would be different from LOIs provided. My state argument to the court is there is no evidence that they are, although I would agree with you and Mr. Allstadt that anecdotally I'm sure that happens. My Santa Monica ordinance precluding arches in front of buildings is another example of the kind of thing that might be different in the executed LOIs. But there is no evidence in the record that the executed LOIs are any different than the LOIs that are provided by Chrysler other than on an anecdotal basis, which I've just acknowledged. Star's expert witness testified that the customer unusual letters usually included incentives. If incentives are common and Star's letter contained none, doesn't that make Star's letter unusual? And therefore, don't we have a material question of fact which can't be decided in summary judgment? I don't think so, Your Honor, for the following reason. But before I answer that, this is the evidence they did submit, and I agree that Mr. Allstadt's opinion is the countervailing evidence under 56C they submitted and is appropriately considered by this Court. Judge Feese concluded that it did not meet the standards of 56C of competent admissible evidence. It was essentially unsupported opinions of their expert without any substantiated documentation or substantive information other than his opinion. And so my answer, Judge Nelson, is that the opinions of Mr. Allstadt do not rise to the level of the competent evidence that Rule 56C requires. And therefore, I think Judge Feese was correct in looking at that evidence, evaluating the evidence, and concluding it did not carry the burden of the nonmoving party to overcome summary judgment. All right. So your position would be, is there a burden to come forward with such evidence? Not yours. What if I disagreed with you that this is, with Judge Feese, that this is not, you know, he says this is not competent evidence. What if I were to conclude otherwise? Well, I think if you believe that the plaintiffs have submitted competent evidence to create a genuine issue of material fact on the question of customary and usual, if that's what you believe, then I think you have to reverse summary judgment. I mean, if there is a genuine issue of fact created, then summary judgment should not be granted. I believe Judge Feese was right that that affidavit and those subjective unsupported statements do not come back and meet the nonmoving party's burden to respond to the moving party's presentation of competent evidence. We presented competent statistical evidence. We produced the provided LOIs. We produced the executed LOIs from across the country for the plaintiffs to analyze and present whatever evidence they wanted about whether the letter they got was customary and usual, and the only thing they submitted was the report of Mr. Allstat. And again, my fundamental position is that is not competent evidence, and Judge Feese found it is not competent evidence to meet their burden as the nonmoving party once we have presented our evidence. In your last minute and 44 seconds, would you mind addressing the vehicle code clause? Yes, absolutely, Your Honor. The California vehicle code claim, Judge Feese correctly found that it appropriately fails for two reasons. One is the standing reason. Vehicle code claims can only be presented by a licensed entity, someone licensed. A prospective dealer is not licensed, and it's clear under Menke and other cases that a prospective dealer does not get the benefit and cannot assert a claim under the vehicle code. The second issue substantively, as Judge Feese found, is that subsection G of 11-713-3 relates to a waiver of liability in a different article. So you have that issue, and I think the plaintiffs essentially conceded that because they replied their complaint to assert a claim under subsection L. Subsection L, their new claim, also dismissed by Judge Feese, has two problems. One, the standing problem, they're not a licensed entity. But the second is, if you look at it, it doesn't read on our conduct. Subsection G talks about getting a waiver or release from a party, so I present a contract to you, maybe it has language in it that the statute prohibits. Subsection G at least relates to the conduct of giving a letter of intent. Judge Feese just correctly found that it doesn't prohibit it because the conduct is referenced in Article IV. Subsection L relates to a manufacturer's conduct in adding dealers, relocating dealers, moving dealers. It has nothing to do with the conduct in question here, which is when we handed a letter of intent to Star, did we violate subsection G? Subsection G has nothing to do with the waiver of a protest right, extracting a release, or anything else. It has to do with an entirely different set of conduct that's completely unrelated to whether our giving them a letter of intent that had a protest waiver in it was appropriate under the vehicle code. Okay. Thank you. We'll hear from the government. I'm sorry? The government. Government. Thank you. May it please the Court. Daniel Tenney for the United States. We're participating in this case only on one issue. It's the issue with which Star began its presentation, which is the question of whether there's a reinstatement remedy separate and apart from the customary and usual letter of intent contemplated by subsection E of the statute. And the right answer to that, as found by the district court, is no, there's no separate reinstatement remedy. Congress was quite clear in the section that designates what happens if you prevail in arbitration, that you get a customary and usual letter of intent. Star is pointing to various other parts of the statute where Congress was discussing generically what you're trying to accomplish, namely to become a part of the dealer network. And exactly what you might call that might differ depending on your circumstances. In this circumstance, it would be being added to the dealer network because Star never had a relationship with New Chrysler. But in any event, the relevant language, and Star has never given any explanation of what effect it would be giving to that language, is the language in E which says you receive a customary and usual letter of intent. So that is the right inquiry under the statute. And then, you know, that would bring you to the questions that the parties have been disputing this morning, which we are not taking a position on. And so unless there are any further questions about that narrow question of statutory interpretation, we think that the district court quite clearly got that one right, and we would urge the court to – So were any of these GM or Chrysler dealers at all entitled to reinstatement? Well, it depends on sort of what you mean by reinstatement. I mean, isn't that term used in the statute? The term is used in the statute. So what was it there for? We don't think that for any dealership, the term is used in the sense of you get exactly the same relationship that you had five years before. And now you might generically call it reinstatement if you previously had a relationship with the new GM company, and then you got a new relationship with the same physical location, the same brands. You might generically call that reinstatement. We don't think that with respect to either GM or Chrysler, Congress intended that reinstatement would mean that you wind the clock back to 2009 before everyone went into bankruptcy and anything new that GM has done over the last five years they can't insist on for this franchisee. And, in fact, if you look in the record, in excerpts of Record 78, as an example, GM sent out customary and usual letters of intent, and the letters of intent had conditions on them, and they said you have to have a facility that complies with our standards. And so even GM wasn't thinking, oh, you just get sort of whatever deal you had five years ago. Now maybe the conditions hadn't changed very much, so it would be easier to get back on. The other textual point on this is if you look at the language, it's on A3 of our appendix of E. It says you get a customary and usual letter of intent to enter into a sales and service agreement. Clearly they're contemplating a new sales and service agreement. This is not to reinstate the old one. So in a colloquial sense you might describe GM dealers who had formed a relationship with a new GM company as being reinstated, but we don't think that that has significance in terms of saying that it has to be line by line identical to the privates, and GM doesn't seem to be interpreting it that way either. I have one general question. Are these cases pretty much resolved throughout the country? I mean, are there many of these cases floating around? I'm aware of a handful of them. There was one in the Second Circuit that was the subject of letters by the parties. There's other litigation pending in the Sixth Circuit, I know. And so this issue has – and there were other cases, I think, from – there was a New Mexico case that was cited by the party. So there are a handful of cases cropping up throughout the country. The statistics have been submitted. I don't know them off the top of my head. The majority of dealerships that would be eligible to apply for arbitration didn't go through it. And then the number is further whittled down because some of them started the arbitration, but then it was ultimately settled, and then some of them didn't prevail. So it's not like there are thousands and thousands of these. And, of course, Chrysler only had 789 terminated dealerships in the first place, and then that number gets whittled down gradually. So there are some other cases around the country, but not sort of a huge number. Thank you. We'll make it a flat two minutes for rebuttal. I appreciate that, Your Honor. I'd like to start on the – this is what I would refer to as the summary judgment point. What matters is not what was produced in discovery. What matters is what was produced on summary judgment by the party with the burden approved. But you'd have to controvert that. And the district judge points out the inadequacy of your expert declaration and noted the fact that items were produced in discovery, but yet the expert never talked about what evidence they presented, which is the letters of intent produced by New Chrysler, instead the expert referred to letters of intent by somebody else. I would have expected that if you had that and it's favorable, that you would have included that in the declaration, and I think the district court was persuaded by the same point. Your Honor, they had the burden of proof, and their argument is that it was customer unusual with respect to other letters. Mr. Tangerman said absolutely nothing about the executed letters of intent. There was a complete failure of proof. There was nothing for us to rebut because they presented nothing. My colleague over here says that he believes they're not different. What he believes is not the relevant issue. What is the relevant issue is what they proved on summary judgment, and as Judge Paez said, for whatever reason, they chose not to present what we understand and what I believe the court should hold is the relevant body of evidence. They produced none of it, zero. Not a single letter of intent, not a single statement from Mr. Tangerman about any executed letters of intent. The one letter of intent that we know about is the one that was issued to Starr, and we know that the one that was issued originally is not the same as the one that they sought to bind us, so we have evidence that there are differences. Our expert also said, as Judge Nelson pointed out, that there are differences in negotiation between these things. If his position is he believes there's no difference, they were required to prove that or they can't get summary judgment. They don't lose their case to be sure. They can present it at trial, but they can't get summary judgment. What matters is what they produced. They had the burden. They said it's customary and usual. They have to compare apples to apples. They did not. Therefore, that should be reversed, and then remanded for further proceedings on that issue. If I might also quickly address some of the things that Mr. Tenney said about the statute. Well, first of all, on the vehicle code, the judge agreed with us on standing and held that we had standing. On the statute, it's not separate and apart. We're not saying reinstatement is separate and apart from. All you need to do is look at what GM did, and I refer the court to page 82 of the excerpt of the record. GM gave its dealers a letter, and it says reinstatement at least three times in the letter. They got their old agreement reinstated. That's what we're asking for. It's not incompatible. There's absolutely nothing. They could do that if they wanted to. I guess Chrysler could have done that here. Chrysler should have done that. Chrysler could have done it. You won your arbitration, we're going to reinstate it. Indeed, and they should have. There were 2,800 dealers who were terminated. 55 of them won arbitrations. All they could have done is give what the arbitrator in the statute said, which is reinstatement. But at a bare minimum, summary judgment was improper because they did not carry their burden of proof. Thank you. Thank you very much. We appreciate the arguments in this interesting case.
judges: Nelson, Paez, Nguyen